## SIMONTON'S CASE.

Defendant in jail cannot make a cession, under the *civil code.*

HE became insolvent in the city of Philadelphia, in which he carried on commerce, assigned all his property for the benefit of a small number of his creditors, and the balance, after paying these, for the benefit of the rest. Without obtaining any discharge, he came to New-Orleans, where he

brought, or received, a power of attorney from his trustees, to collect for them a considerable sum, due him before the assignment. One of his creditors in Philadelphia, not named in the bill of trust, brought suit against him ; he was arrested and committed to prison. With the view of obtaining his liberty, he called a meeting of his creditors, a discharge was granted to him, and the homologation of the proceedings of the creditors, before the notary, was now moved for.

*Hennen* and *Duncan,* contra. A bankrupt who makes a cession of his goods abroad, cannot come and claim here the benefit of our insolvent law. *Meeker* vs. *his creditors.* 1 *Martin* 68.

THE proceedings in Philadelphia were fraudulent against the creditors, postponed till the full payment of the favoured few. A postponement which operates a total exclusion : the property ceded hardly sufficing to the payment of the preferred creditors.

*Immoral* fraud is not charged—*legal* suffices.

IN ascertaining the character of the assignment, we will be supplied with a clue from considering its effect. If it secure the person of the debtor in Pennsylvania, it will secure him here.

A VOLUNTARY assignment is no protection. It is a legal fraud in favour of certain creditors against the others.

FALL 1811.  WHAT may be the effect of the assignment,
First district.
            on the property here, is not a necessary in-
SIMONTON'S quiry, we are to examine its effect on the person
  CASE.    of the debtor. He came without a discharge,
           protected by his assignment only, and that, it is
           admitted, would be no shield in Pennsylvania.

· IT is said that a debtor may favour particular
creditors. The right has been allowed, perhaps,
on principles of humanity, or in favour of just
debts, to exclude debts at law, not strictly *ex
debito justitiæ.* I do not think that the practice
should be encouraged. It is calculated to create
confusion, uncertainty, and collusion. I see no-
thing that will prevent the mischiefs of voluntary
settlements and conveyances, but a general decla-
ration, that they are all void, as against creditors.
*Brackenridge* J. in *Byrd* vs. *Smith.* 4 *Dallas,* 88.

THE debtor, who, in fraud of his creditors,
conceals or aliens his goods, *enagena sus bienes,*
cannot make a cession of his goods. *Cur. Phil.*
166, *n. 5. id.* 406, *n.* 3.

A TRADER may shew a preference to a particu-
lar set of his creditors, provided it be not done
under the apprehension of an impending bankrupt-
cy, and the property, which he sets aparts for the
payment of those favourite creditors, does not ex-
haust his whole estate, or approach so near to the
whole, that the exception is merely colourable.
But, if the assignment be of the whole of his ef-

fects, or though of part only, if in contemplation of bankruptcy, it is fraudulent and void. *Newland on contracts*, 38. 1 *Burrows*, 478, 481. 3 *Wils.* 47. 1 *Douglas*, 85. *Cooke's B. L.* 114. 4 *Burr.* 2285, 2174. *Cowper* 117, 619.

A CREDITOR expresses to his debtor his dissatisfaction at the appearance of his affairs : a fortnight after, the debtor, in contemplation of his bankruptcy, transfers to the creditor, certain promissory notes, as a collateral security for the debt, and the next day commits an act of bankruptcy. Such a transfer is fraudulent and void, as against the creditors and the policy of the bankrupt laws. The notes are the property of the assignees of the bankrupt, notwithstanding such transfer. 3 *Mass. Rep.* 325. *Locke* vs. *Winning*.

SIMILI modo ad cessionem haud admittendus qui bona in fraudem creditorum dissipavit ac decoxit : quia æquum non est dolum suum quemquam relevare ; longeque justius puniri eum, qui se se ita bonis exuit. Idemque dicendum in eo qui dolosi corradendo, celando, interventendo, abducendo res suas creditoris fraudat. 2 *Voet.* p. 664, n. 5.

IN the case of D. C. Stewart, chief justice Nicholson, of Maryland, said, " I have always " thought that an assignment of property to one " or more creditors, to the exclusion of others, in " contemplation of insolvency, was an undue and

O

FALL 1811.
First district.

SIMONTON'S
CASE.

"improper preference, within the meaning of the
"act of 1805. 2 *Am. Journal*, 192. I think the
"most laborious research may be defied to pro-
"duce a single instance, in which the assignment
"by the debtor of his whole effects, to one or
"more creditors, in exclusion of all the rest, has
"been sustained, when the assignment was made
"at a time that the debtor knew of his own insol-
"vency, and with no other intent than to give a
"preference. *id.* 189.

*Livingston* for the insolvent. It would be too
severe to say that, whenever there is a fraud, the
party shall not be enabled to have the benefit of a
cession of his goods.

THE assignment is *legal* or not. If legal, not
fraudulent; if fraudulent, void: something or no-
thing. If legal it must protect, if illegal it cannot
injure, for it is null and void: *quod nullum est,
nullum habet effectum.*

IN *Meeker*'s case, this court considered a cre-
ditor as having acquired a hold on some property,
which he considered himself exclusively entitled to,
against the rest of the creditors.

THE creditor here who opposes the insolvent's
discharge, seeks that advantage, which he com-
plains certain creditors in Pennsylvania have ob-
tained: and this is asked of the court, in the most
odious way, by requiring the detention of the in-
solvent.

DEBTS are always recoverable out of the *property*, never by torturing the debtor's *person*.

No suspicion of, no hint to, any reservation.

THE assignment is said to be legally, not morally, fraudulent: not positively so, by taking off any part of the property from the stock, for the benefit of the debtor.

NATURALLY, the debtor would secure such friends as helped him in the time of need, in preference to shavers and others. If so, the assignees are entitled to the property assigned, and the insolvent, having no control over it, cannot be detained on account of it.

IF A. indebted to B., after being sued to judgment and execution by B., go to C. and voluntarily give him a warrant of attorney to confess judgment, on which judgment is immediately entered and execution levied, on the same day, on which B. would have been entitled to execution, and had threatened to sue it out, the preference so given by A. to C. is not fraudulent. *Holbird* vs. *Anderson & al.* 5 *T. R.* 235.

THERE cannot be any doubt of the right of a debtor (and cases may be easily conceived in which it would be a duty) independent of the bankrupt laws, to give a preference to some of his creditors, in exclusion of the rest: and from such a preference alone, the court would not be disposed,

FALL 1811.
First district.

SIMONTON'S
CASE.

hastily to infer collusion, secret trusts, or medita-
ted frauds.    *Per Smith, J.* in *Byrd* vs. *Smith.* 4.
*Dallas*, 86.

A FAIR voluntary conveyance may be good
against creditors, notwithstanding its being volun-
tary.    The circumstance of a man being indeb-
ted, at the time of his making a voluntary con-
veyance, is no argument of fraud.    The question,
in every case, is, whether the act done is a *bona
fide* transaction, or whether it is a trick and contri-
vance to defeat creditors. *Cadogan* vs. *Kennet,
Cowper*, 434, 475.

IN the case of *Nunn* vs. *Wilmore*, lord Kenyon
said that, putting the bankrupt law out of the case,
a debtor might assign all his effects for the benefit
of particular creditors.    For the consideration is a
valuable one. 8 *T. R.* 528, *Newland on contracts.*

*By the Court.*   It does not appear material in
this case, to ascertain the character and validity of
the transfer, made by the insolvent to some of his
creditors in Philadelphia.    Admitting the fairness
and legality of it, it is perhaps an obstacle to the
*cessio bonorum* of this territory ; for by this trans-
fer the debtor has deprived himself of the means of
complying with the requisites of our law.

THE *cessio bonorum* is the relinquishment that
a debtor makes of all his property to his creditors,

when he finds himself unable to pay his debts.
*Civil Code.* 294, *art.* 166.

In the present case, the insolvent, *when he*
*found himself unable to pay his debts*, instead of
surrendering his property for the benefit of all his
creditors, did assign and transfer it all to *a few of
them.* The liberation which the cession operates,
is perhaps a reward held out, as an inducement to
debtors, fairly to cede their property to all their
creditors, and to deter them from sacrificing the
interests of all, to the advantage of a few.

The cession, to be valid, must be a serious and
fair one. Is that cession a serious and fair one,
which is made of nothing at all, of a snuff box, or
a few desperate debts, while, a few days before,
the debtor, *when he found himself unable to pay
his debts*, disabled himself to make a cession, as
the civil code requires, by assigning all his proper-
ty to one or a few of his creditors?

By the act of 1808, *ch.* 16, which received the
governor's signature on the 25th of March, an im-
prisoned debtor may obtain his release, by depo-
siting in the office of the clerk of the court, under
whose process he was arrested, all his books and
accounts (if he be a merchant or trader) and ob-
taining an order for the meeting of his creditors,
who may examine him on oath, on the state of his
affairs, in presence of the court; and should the

court be satisfied with the fairness and regularity of his books, and *two thirds* of his creditors, in number and amount, consent to his discharge, he is to be released from all his debts.

BUT, if that number do not consent, three commissioners are to be appointed, to investigate the accounts and papers of the debtor; and on their report, the judge may, in his discretion, release him from confinement, on his assigning over all his property.

No debtor may have the benefit of this act, unless he have resided one year in the territory and be in actual custody; nor if fraud be proven against him; nor if, in contemplation of the benefit of this act, he have, within three months previous to his arrest, *assigned any part of his effects in trust,* or as a donation or gift, mortgaged his property, confessed a judgment, or otherwise disposed of the same : all such assignments, mortgages, confessions of judgment, or *giving an undue preference to any one or more creditors,* in exclusion of other creditors, are void, unless at the time of such assignment, mortgage, or confession of judgment, he received a *bona fide* consideration therefor.

AN act of the same year, *ch.* 17, approved the 31st of the same month, as a supplement to the above, excludes all bankrupts who have disposed

of funds, entrusted to them, in deposit, commission, or trust.

By the *Civil Code, p.* 294, *s.* 5, which was approved on the same day, the *cessio bonorum* is defined as the relinquishment which a debtor makes of all his property to his creditors, when he finds himself unable to pay them.

It is declared subject to formalities prescribed by special laws.

The consent of the *majority* of the creditors in number and amount, releases the debtor from his debts.

A question presents itself. Do the provisions in the *Civil Code*, virtually repeal the acts of 1808, *ch.* 16 & 17? The latter was approved on the same day as the code, and the former probably passed the houses after the code, and was signed by the governor six days only, before the date of the approbation of the code, which, from its bulk, must be presumed to have remained several days in the governor's hands.

We imagine the code repeals neither of the acts cited; that they are some of those special laws, to the formalities of which the *cessio bonorum* is declared to be subject. *Art.* 169.

In this view of the case, these acts and the code are to be construed together, being *in pari materia,* as forming one law.

THEN, it is impossible to give effect to the two first acts, unless the court declare that no debtor can, while in custody, validly make a *cessio bonorum* under the *Civil Code*—for if a prisoner could, the two first acts would be of no force and effect.

No debtor would ever seek the benefit of these acts, as they require very inconvenient formalities —the debtor must deposit his books, be examined on oath, *two thirds* of his creditors must agree. If he have violated the trust of a deposit, &c. he is to be excluded. Under the *Civil Code* the road is broad and easy : a simple cession suffices ; the inconveniency of producing books, and of answering on oath the questions of importunate creditors, is avoided—neither can any objection be apprehended on the score of a violation of trust—the concurrence of a *majority* of the creditors suffices.

CONSIDERING, therefore, the two first acts as in force, and the only ones under which a prisoner can procure his discharge, it remains to inquire whether a person, who has not remained one year in the territory, and is therefore excluded from the benefit of these acts, may be relieved by the simple cession under the *Civil Code*.

IF the Court be obliged to say that a person, who has been a resident of the territory upwards of one year, could not successfully have the benefit of a cession under the provisions of the code, it will

be difficult for them to say that a stranger could
do it. This case appears a *casus omissus*, for
which it is not in the power of the court to pro-
vide a remedy.

FALL 1811.
First district.

SIMONTON'S
CASE.

HOMOLOGATION DENIED.*

MOTION DENIED.

---

* THE insolvent was afterwards relieved by a special
act of assembly—June session, 1812.